Argued and submitted November 6, 2001, decision of Court of Appeals reversed in part and affirmed in part; judgment of circuit court affirmed January 31, 2003

## Mable SHOUP,
*Petitioner on Review,*

*v.*

## WAL-MART STORES, INC.,
*Respondent on Review.*

## (97C-14504; CA A106153; SC S48171)

61 P3d 928

J. Michael Alexander, of Swanson, Lathen, Alexander & McCann, P.C., Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs was Charese Rohny, of Vick & Conroyd, LLP, Salem.

Peter R. Chamberlain, of Bodyfelt, Mount, Stroup & Chamberlain, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Jennifer J. Peet, Portland.

Meagan A. Flynn, of Preston, Bunnell & Stone, LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Lindsey H. Hughes, of Keating, Jones, Bildstein & Hughes, P.C., Portland, filed the brief for *amicus curiae* Oregon Association of Defense Counsel.

BALMER, J.

### BALMER, J.

Plaintiff brought this negligence action against Wal-Mart, Inc. (defendant), after one of defendant's employees injured plaintiff by bumping into her and knocking her to the floor. The jury considered three specifications of negligence and returned a general verdict in plaintiff's favor. The Court of Appeals reversed and remanded the case for a new trial, holding that one of plaintiff's specifications did not state a claim for negligence under Oregon law and that defendant, therefore, was entitled to a new trial under the "we can't tell" rule that this court announced in *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 788 P2d 428 (1990). *Shoup v. Wal-Mart Stores, Inc.*, 171 Or App 357, 359, 15 P3d 588 (2000). We allowed plaintiff's petition for review. As explained below, we conclude that allowing defendant a new trial under the "we can't tell" rule is incompatible with ORS 19.415(2), which provides that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party." Accordingly, we reverse in part the decision of the Court of Appeals.

### I.

The record establishes the following material facts. Plaintiff, who was then 89 years old, entered defendant's store and attempted to walk past defendant's employee, who was standing in the aisle with his back toward plaintiff. The employee, to get out of the way of another shopper, suddenly stepped backward, striking plaintiff in the face with his elbow and knocking her to the floor. Plaintiff was rendered momentarily unconscious, and she suffered extensive bruises and other soft-tissue injuries.

Plaintiff brought an action alleging that defendant was negligent in (1) failing to supervise its employee, (2) instructing its employee to stand in the aisle and thereby create an obstacle to persons entering the store, and (3) failing to train its employee to keep a proper lookout. Plaintiff further alleged that defendant was vicariously liable for the negligence of its employee in (1) failing to use reasonable care, (2) failing to keep a proper lookout, and (3) failing to maintain control over his body. Defendant admitted that its

employee was acting within the course and scope of his employment when he injured plaintiff.

The action was tried to a jury. At the close of plaintiff's case, defendant moved for a directed verdict, making particular objections to each of plaintiff's specifications of negligence. The trial court granted defendant's motion in part, but allowed three specifications to go to the jury: whether defendant was negligent in instructing its employee to stand in the aisle; whether defendant's employee was negligent in failing to use reasonable care; and whether defendant's employee was negligent in failing to keep a proper lookout.

At the close of defendant's case, plaintiff proffered a verdict form that asked two separate questions, one regarding defendant's negligence and one regarding the negligence of defendant's employee. Defendant objected to plaintiff's form and proffered a general verdict form that did not distinguish between the negligence of defendant and its employee or between the two specifications of negligence on the part of the employee. In response to defendant's objection, plaintiff withdrew her verdict form, and the trial court used defendant's form. As noted above, the jury returned a general verdict in plaintiff's favor. Defendant neither moved for a new trial nor for a judgment notwithstanding the verdict (JNOV), and the trial court entered judgment for plaintiff.

On appeal, defendant argued that the specification of negligence based on defendant's instructions to its employee did not state a claim for negligence under Oregon law and, alternatively, that that specification was unsupported by the evidence. The Court of Appeals agreed that the specification did not state a claim for negligence and held that the trial court had erred in submitting it to the jury. *Shoup*, 171 Or App at 364. The Court of Appeals then held, citing *Whinston*, that, because it could not tell on which specification of negligence the jury had based its verdict, defendant was entitled to a new trial. The Court of Appeals explained that, under *Whinston*:

> "[T]he prevailing *plaintiff* bears the burden of developing a record (most often through a special verdict) sufficient to establish the harmlessness of the error of submitting a

defective specification to the jury. That is the *plaintiff's* obligation; the defendant need not do anything."

*Shoup*, 171 Or App at 373 (emphasis in original).

On review, plaintiff does not challenge the Court of Appeals' decision that her direct liability specification does not state a claim for negligence. Neither does she disagree that, under the "we can't tell" rule, defendant would be entitled to a new trial because the reviewing court cannot determine whether the jury based its verdict on the defective specification of negligence or on one (or both) of the two valid specifications. Instead, plaintiff argues that this court should abandon the "we can't tell" rule. She contends that, because there were two other, valid specifications of negligence and ample evidence to support them, an appellate court cannot conclude that the trial court's error in submitting the defective specification of negligence to the jury substantially affected defendant's rights. For that reason, plaintiff asserts, to reverse the trial court's judgment and order a new trial would violate ORS 19.415(2), which precludes an appellate court from reversing a judgment "except for error substantially affecting the rights of a party."

Defendant contends that the application of the "we can't tell" rule does not violate ORS 19.415(2) and urges us to adhere to that rule. Defendant asserts that, when the reviewing court cannot tell whether the jury has based its verdict on a defective or on a valid specification, the trial court's error in submitting the defective specification to the jury was an error that, *per se*, substantially affected the appellant's rights. Such an error, according to defendant, is prejudicial and requires a new trial.

As explained further below, we disagree with defendant that such an error is prejudicial. Accordingly, we conclude that the "we can't tell" rule violates the limitation on appellate courts set out in ORS 19.415(2). Because of that infirmity, we abandon the "we can't tell" rule. We begin our explanation by reviewing this court's decision in *Whinston*.

## II.

*Whinston* was a medical negligence action that included three specifications of negligence in one claim for

relief against a physician. The plaintiff alleged that the defendant physician had been negligent in (1) failing to perform a biopsy, (2) failing to diagnose cirrhosis, and (3) failing to diagnose vitamin A toxicity. The jury returned a general verdict in favor of the plaintiff, and the trial court entered a judgment on that verdict. The defendant then moved for a JNOV or, in the alternative, a new trial. The trial court concluded that there was no evidence that the physician's conduct had fallen below the applicable standard of care and entered a JNOV. The plaintiff appealed.

The Court of Appeals reversed. *Whinston v. Kaiser Foundation Hospital*, 93 Or App 528, 763 P2d 177 (1988). It concluded that there was sufficient evidence that the physician negligently had failed to diagnose cirrhosis and that, therefore, the trial court had erred in entering a JNOV. *Id.* at 532. The Court of Appeals then considered whether judgment should be entered for the plaintiff based on the jury verdict or whether the defendant nevertheless was entitled to a new trial because the court could not tell whether the jury had based its verdict on the specification that properly was submitted to the jury or on one of the specifications that was not. Relying on its interpretation of earlier decisions from this court and on "the constitutional and statutory admonitions that we reverse only when we can determine that error was prejudicial," the Court of Appeals remanded the case to the trial court with instructions to enter judgment on the verdict, holding that "when several issues are submitted to the jury, a general verdict will stand if any one of the issues was properly submitted, even if there might be errors related to others." *Id.* at 530-31.

On review, this court agreed with the Court of Appeals' conclusion that one of the plaintiff's specifications of negligence was supported by the evidence. *Whinston*, 309 Or at 356. Accordingly, it affirmed the Court of Appeals' decision that the trial court erred in entering the JNOV. However, this court disagreed with the Court of Appeals' decision ordering entry of judgment on the general jury verdict. The court noted that, despite contrary wording in some cases (*see* 309 Or at 357-59 (discussing cases inconsistent with "we can't tell" rule)), precedent favored remanding for a new trial in such circumstances and stated, "[W]e decline to adopt a

different rule at this time." The court summarized its holding as follows:

> "In such cases, where (1) more than one allegation of negligence is submitted to the jury; (2) one or more of, but not all, the allegations are unsupported by the evidence; and (3) it cannot be determined upon which allegation the jury based its verdict, this court has held that a new trial must be granted."

*Id.* at 357. The court dubbed that rule the "we can't tell" rule. *Id.*

As the foregoing discussion reveals, in *Whinston* this court did not view the question whether to remand for a new trial or with instructions to enter a judgment for the plaintiff based on the jury verdict as a question that required it to address whether the "we can't tell" rule is consistent with ORS 19.415(2).[1] The only aspect of this court's holding in *Whinston* that directly implicated ORS 19.415(2) was its threshold conclusion that the JNOV entered for the defendant should be reversed because there was evidence to support the jury verdict in the plaintiff's favor. That aspect of the *Whinston* holding was correct, because the trial court's entry of a JNOV, when there was evidence to support the plaintiff's jury verdict, "substantially affect[ed]" the plaintiff's rights. However, the problematic scope of the "we can't tell" rule is apparent in a situation such as the one before us, in which the party that *lost* a jury trial seeks to apply the rule in an appeal from a judgment entered on a general verdict. In such a situation, we are squarely presented with the question whether the "we can't tell" rule is compatible with the statutory authority of an appellate court to reverse a judgment

---

[1] As noted above, the Court of Appeals based its decision in *Whinston* to remand for entry of a judgment on the verdict, rather than for a new trial, in part on "constitutional and statutory admonitions that we reverse only when we can determine that error was prejudicial." *Whinston*, 93 Or App at 530. That court cited the predecessor statute of ORS 19.415(2) as support for the general proposition just quoted, although by its terms the statute speaks only to when a trial court "judgment" may be "reversed or modified" and not to the appropriate disposition after reversal of a JNOV. The latter question is more properly analyzed as the trial court would analyze a motion for a new trial, although the standards are similar, if not identical. *See post*, 335 Or at 177 (discussing standard for granting new trial motion). In any event, this court in *Whinston* did not cite or discuss the predecessor statute of ORS 19.415(2).

only for an error "substantially affecting the rights of a party." ORS 19.415(2).

## III.

As noted above, defendant argues that the "we can't tell" rule and the mandate of ORS 19.415(2) are not inconsistent, because the submission to the jury of an invalid specification, *per se*, substantially affects the rights of the party opposing that specification. Defendant contends that the "substantially affects the rights of a party" standard is whether, absent the error, the "outcome of the trial may have been different." In support of that argument, it quotes the following passage from *Baker v. English*, 324 Or 585, 590, 932 P2d 57 (1997):

> "[In] applying [ORS 19.415(2)], this court often examines whether it is likely that a trial court's error affected the outcome of the case below. For example, in cases in which a trial court's error either did or may have affected the outcome, such as an error concerning a key issue before the jury, this court has concluded that the error substantially affected the rights of a party and, therefore, was prejudicial. The rationale behind such a conclusion is obvious: The rights of an aggrieved party are substantially affected if the outcome either would have or may have been different had the error not occurred."

Defendant then contends that, in any case posing a "we can't tell" problem, the *possibility* that the jury based its verdict on an invalid specification indicates that the outcome of the trial "might have been different" if the trial court had not erred. Therefore, defendant argues, application of the "we can't tell" rule never runs afoul of ORS 19.415(2). As we shall explain, however, the standard that defendant invokes is based on an overly broad reading of *Baker* and an incorrect interpretation of the statute.

In *Baker*, this court reviewed case law applying ORS 19.415(2). The court began that review—in the passage quoted above—by noting that, to determine whether ORS 19.415(2) permitted reversal of a judgment, the court historically had examined whether the error had affected the outcome of the trial. 324 Or at 590. The court pointed out that an outcome-based test appealed to common sense: If there were

no harm to the party appealing, then there was no foul worth correcting. *See id.* at 590-92 (contrasting "harmful" or "prejudicial" error with "harmless" error).

In so stating, however, this court did not offer the phrase "whether the outcome 'may have been different' " as a standard for determining when an error at trial requires reversal. To the contrary, this court emphasized that its previous outcome-related inquiry, although useful, was not the test that the statute mandates:

> "The case law summarized above demonstrates that an inquiry into the likelihood whether a trial court's error affected the outcome of the case below can serve as a useful tool in determining whether the error resulted in prejudice to a party. However, that inquiry, albeit helpful in some cases, is not the test for determining prejudice. Rather, our focus in this and all similar cases is the statutory test set forth in ORS 19.[415](2): 'No judgment shall be reversed or modified *except for error substantially affecting the rights of a party.*' (Emphasis added.) That is the only statutorily mandated test for determining whether an error requires reversal."

*Baker*, 324 Or 592-93 (underscoring added; italics in original; footnote omitted). *Baker* emphasized that the text of the statute itself assumes that an error has occurred, but permits reversal of the trial court judgment *only* if the error "substantially affect[ed] those rights." *Id.* at 593 n 8. Thus, this court's opinion in *Baker* did not use, and does not support, the "outcome might have been different" standard that defendant proposes for when an appellate court may reverse a judgment on appeal.[2]

Further consideration of defendant's "outcome might have been different" standard also demonstrates that it is not, as defendant argues, synonymous with the

---

[2] We note that this court, in *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106-07, 957 P2d 147 (1998), cited *Baker* as indirect authority for the proposition that the rights of a party are "substantially affected" if "the outcome of the case either would have or may have been different had the error not occurred." In that regard, *Hernandez*, like defendant's argument in this case, takes this court's statement in *Baker* out of context. We do not, however, question the conclusion reached by this court in *Hernandez*. The error in jury instructions at issue in *Hernandez* was "reversible" under ORS 19.415(2).

"substantially affects" standard of ORS 19.415(2). Under defendant's standard, if there were *any* possibility that the error at issue affected the outcome of the case, then the court must order a new trial. Because it is almost always *possible* that an error at trial affected the outcome, defendant's proposed standard would lead to retrial of most, if not all, cases in which there was trial court error in submitting claims to the jury, among other possible trial errors.

That result is the opposite of the policy determination that ORS 19.415(2) embodies. Under the statute, "no judgment shall be reversed * * * except for error *substantially affecting* the rights of a party." (Emphasis added.) The words of ORS 19.415(2) demonstrate that an error must cause something more than the "possibility" of a different result before the appellate court may reverse a judgment. To "affect" means, among other things, "to act upon: **a**: to produce an effect (as of disease) upon * * * **b**(1): to produce a material influence upon or alteration in * * * (2): to have a detrimental influence on * * *." *Webster's Third New Int'l Dictionary* 35 (unabridged ed 1993). Thus, an error "affecting" a party's rights is an error that can be said to "*produce* a material influence" or "to *have* a detrimental influence" on those rights, and not merely one that "might" have changed the outcome of the case. The use of the adverb "substantially" further limits the type of error that can result in reversal of a judgment. "Substantially" means "in a substantial manner," and the relevant definition of "substantial" is "being of moment: IMPORTANT, ESSENTIAL." *Id.* at 2280.

Those definitions indicate how far defendant's proposed "outcome might have been different" standard is from the standard set out in ORS 19.415(2). The possibility that an error might have resulted in a different jury verdict is insufficient under the statute. Instead, the court must be able to conclude, from the record, that the error "substantially affect[ed]" the rights of the losing party. Moreover, the statute protects the trial court judgment from reversal or modification "except for" error substantially affecting a party's rights, indicating that reversal of a judgment is the exception, not the rule. The rule embodied in ORS 19.415(2) is neutral as between plaintiffs and defendants; it places the burden to make a record that demonstrates prejudicial error on

whichever party loses in the trial court and then seeks reversal or modification of the judgment on appeal.

■ For the foregoing reasons, we find defendant's arguments unpersuasive. We conclude that the "we can't tell" rule, which this court relied upon in some earlier cases and synthesized in *Whinston,* is inconsistent with ORS 19.415(2). Because that court-made standard conflicts with the standard that the legislature determined for reversal by an appellate court of a trial court judgment, it must give way. In every case, the appellate courts must adhere to the limitation of ORS 19.415(2) and reverse or modify a judgment only if it can be determined from the record that the error "substantially affect[ed] the rights of a party."

## IV.

■ ■ In abandoning the "we can't tell" rule described in *Whinston,* we recognize that we are overruling a prior court-created rule. This court may change a prior court-created procedural rule when the "reasons for [the rule] are no longer present." *Heino v. Harper,* 306 Or 347, 365, 759 P2d 253 (1988). This court also may overrule a substantive rule of common law in several circumstances, one of which is when "[the] earlier case was inadequately considered or wrong when it was decided." *Id.* at 373, *quoting G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 59, 757 P2d 1347 (1988). As explained in part III, above, we now conclude that the court-made rule in *Whinston* is inconsistent with what appears to us to be the appropriate reading of ORS 19.415(2). That conclusion, standing alone, is sufficient to meet the *Heino* criterion for overruling an earlier court-created rule of substantive law.[3] Nonetheless, in light of this court's earlier cases applying the "we can't tell" rule, we discuss here in greater depth the reasons we believe that the "we can't tell" rule stated in *Whinston* was "inadequately considered or wrong when it was decided."

As we noted in our earlier summary, *Whinston* implicated ORS 19.415(2) only in its threshold conclusion

---

[3] Because *Whinston*'s "we can't tell" rule meets the criteria for changing both court-created procedural and substantive rules, we need not decide whether the "we can't tell" rule is procedural or substantive as those terms are used in *Heino.*

that the JNOV should be reversed because there was evidence to support the jury's verdict. The court in *Whinston* nevertheless went on to describe the "we can't tell" rule, which applies to appeals from judgments based upon a jury's verdict and also is governed by ORS 19.415(2). In describing the "we can't tell" rule, the court in *Whinston* noted that this court previously had concluded that a new trial was warranted when a trial court had erred in submitting an invalid specification of negligence to the jury over the appellant's objection and the reviewing court could not determine whether the jury had based its verdict on the invalid specification. One such case upon which *Whinston* relied was *Pavlik v. Albertson's, Inc.*, 253 Or 370, 454 P2d 852 (1969). However, in *Pavlik*, this court merely stated that conclusion in a single sentence, providing no analysis or justification for the rule and citing no case or statute. 253 Or at 375. *Pavlik* thus provides little analytical support for the proposition that, without evidence that the jury relied on that specification, the record demonstrates that a party's rights are substantially affected when the trial court errs in submitting an invalid specification of negligence to the jury. Moreover, *Pavlik* did not analyze, or even discuss, the proper role of ORS 19.415(2) in its inquiry.

Neither does this court's decision in *Layne v. Portland Traction Co.*, 212 Or 658, 319 P2d 884 (1957), which *Whinston* also cited, support the "we can't tell" rule. In that case, the court, citing *former* ORS 19.120 (1957), a predecessor statute to ORS 19.415(2), concluded that a new trial was warranted not only because the trial court erred in submitting to the jury a specification of negligence that was unsupported by any evidence, but also because the trial court erred in giving an "emergency" instruction, which the plaintiff had requested, when there was no evidence of an emergency. 212 Or at 674. Thus, because the court based its reversal upon consideration of both errors, *Layne* does not stand for the proposition that a party's rights are substantially affected by the submission of an invalid specification of negligence alone.

Finally, in other cases that *Whinston* cited, this court had acknowledged that the erroneous submission of a specification of negligence to the jury can be harmless error. *See, e.g., Martin Engineering v. Opton*, 277 Or 291, 297, 560

P2d 617 (1977) (so stating); *Alvarez v. Great North. Railway Co.*, 261 Or 66, 76, 491 P2d 190 (1972) (same). The *Whinston* "we can't tell" rule is not consistent with that kind of harmless error approach.

The foregoing discussion reveals that, in addition to conflicting with ORS 19.415(2), *Whinston's* vulnerability existed at the time that the court made that decision. Indeed, in *Whinston* itself, this court recognized both the uncertain provenance and the potentially clouded future of the "we can't tell" rule. First, the court specifically noted, in articulating that rule, that "we decline to adopt a different rule *at this time*," 309 Or at 359 (emphasis added). In addition, the court warned "careful practitioner[s]" to use special verdicts "to guard against an untoward outcome were this court to retreat from the *Pavlik* rule." *Id.* at 359 n 10. Thus, although the result in *Whinston* was not without some support in prior case law, even at the time it was articulated this court clearly viewed the "we can't tell" rule as a court-made rule, the foundations of which were uncertain at best.

## V.

Before we return to the case on review, we think that it is appropriate to go further and address the application of the "we can't tell" rule in cases such as *Whinston*, in which its use does not directly violate the mandate of ORS 19.415(2). As explained above, we hold today that appellate courts, to act within statutory limitations, may not apply the "we can't tell" rule to order a new trial in a case involving a judgment on a general verdict based on multiple specifications, one of which is invalid, if there is evidence to support another, valid specification. However, in cases such as *Whinston*, the "we can't tell" rule has been applied, not to reverse a judgment based on a jury verdict but, instead, to order a new trial following reversal of a JNOV. Because we discern no reason to reject the "we can't tell" rule when the appeal is from a judgment entered on a jury verdict, as in this case, and to continue to adhere to that rule when the appeal is from a JNOV, as in *Whinston*, we conclude that a new trial is not warranted automatically in either circumstance.

■    After reversal of a JNOV, the appellate court must determine whether to remand the matter to the trial court for entry of judgment in the nonmoving party's favor or for a new trial. That decision will depend on a variety of factors, including, in particular, the other motions made in the trial court and the grounds for those motions.[4] In disavowing that aspect of *Whinston*, we hold only that the reversal of a JNOV in a "we can't tell" situation does not necessarily mean that the court must order a new trial.

■    We note that the foregoing approach is consistent with that used by a trial court to determine whether an error warrants a new trial. ORCP 64 B uses words similar to those in ORS 19.415(2) and provides that a trial court may set aside a judgment and order a new trial when there has been a legal error or insufficiency of the evidence "materially affecting the substantial rights of a party * * *." We see no reason to have a less demanding standard when an appellate court must determine the appropriate disposition after finding an error in a case on appeal than when a trial court rules on a new trial motion.[5]

---

[4] A party that moved for JNOV in the trial court might or might not have moved, alternatively, for a new trial. If that party did not move for a new trial, then the motion is deemed to be waived. ORCP 63 C. That waiver might mean that the party is not entitled to a new trial. *See, e.g., Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 325 Or 46, 53, 932 P2d 1141 (1997) (failure to move in alternative for new trial operated as waiver of remedy of new trial with respect to error at issue in motion for JNOV). If, on the other hand, the party did move alternatively for a new trial, and if the trial court ruled on that motion, then the record concerning that motion and ruling may influence the appellate court's decision concerning the appropriate disposition of the case after the reversal of the JNOV.

[5] Like the cases decided under ORS 19.415(2), the cases applying ORCP 64 B (and its statutory predecessor, *former* ORS 17.610) show that a party is entitled to a new trial only where the record demonstrates "substantial" or "prejudicial" error. A mere showing that the outcome of the trial "might" have been different absent the error is insufficient. In *Landolt v. The Flame, Inc.*, 261 Or 243, 492 P2d 785 (1972), for example, a jury verdict was rendered for the plaintiff, but the trial court granted the defendant's motion for a new trial based on various evidentiary and instructional errors. This court reversed and ordered entry of a judgment based on the jury verdict, concluding that the errors did not warrant a new trial: "A new trial may be granted only where there is a basis for a finding by the trial judge of substantial prejudicial error." *Id.* at 262, *quoting McIntosh v. Lawrance*, 255 Or 568, 572, 469 P2d 628 (1970). *See also Williams v. Laurence-David*, 271 Or 712, 534 P2d 173 (1975) (reversing trial court's granting of plaintiff's motion for new trial following jury verdict for defendant because of no "substantial prejudicial error").

## VI.

■ We return now to the question whether the trial court error warranted reversal in this case. The error at issue here was the submission to the jury of the specification of negligence based on defendant's instruction to its employee to stand in the aisle to greet customers. As noted above, the Court of Appeals held that that specification did not state a claim for negligence under Oregon law, and plaintiff did not seek review of that ruling. That specification was, however, submitted to the jury along with specifications of negligence based on the failure of defendant's employee to use reasonable care and to keep a proper lookout, both of which are valid claims for negligence, and the jury returned a general verdict for plaintiff. The evidence that plaintiff introduced in support of her negligence claim was straightforward: Plaintiff, her husband, her physician, and the store employee were the only witnesses at trial. There was no dispute that plaintiff was injured when she was struck by the store employee, who was backing up to get out of another shopper's way. All three specifications of negligence were based on the same evidence, and the jury concluded that plaintiff had proved her negligence claim.

The issue before us is whether, based on the record, the inclusion of the invalid specification of negligence "substantially affect[ed]" defendant's rights. Defendant has not identified anything in the record to demonstrate that the jury based its verdict on that specification.[6] A special verdict would have allowed defendant to show the claims or specifications upon which the judgment was based and thus to provide us with a record that would allow us to determine whether the trial court error was prejudicial. *See Whinston,* 309 Or at 359 n 10 (describing benefits of special verdict or

---

[6] As noted, the specification at issue in this case is invalid because it fails to state a claim of negligence under Oregon law. Our analysis would be the same, however, if the specification were invalid merely because of insufficiency of the evidence. We decline to create different rules depending on the reason for which the specification is invalid, although we recognize that other jurisdictions have chosen to do so. *Compare H.E. Culbertson Co. v. Warden,* 123 Ohio St 297, 175 NE 205, 207 (1931) ("two-issue" rule: general verdict will be upheld if any specification submitted to jury was free from error), *with Ricks v. Jackson,* 169 Ohio St 254, 159 NE 2d 225, 227 (1959) ("two-issue" rule does not apply when jury is charged on issue about which there should not have been charge; in such cases, prejudice presumed).

interrogatories to jury). In this case, however, defendant objected to plaintiff's proposed special verdict form, and the court used defendant's general verdict form. We agree with plaintiff that the record does not demonstrate that the jury based its verdict on the invalid specification and that defendant, therefore, is unable to show that the trial court's error substantially affected defendant's rights. Accordingly, under ORS 19.415(2), there is no basis to reverse the trial court judgment and order a new trial.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is affirmed.