Argued and submitted May 13, 2009, affirmed March 3, 2010

PORTLAND GENERAL ELECTRIC COMPANY,
*Plaintiff,*

*v.*

Kenneth HICK
and Cheri D. Cooley-Hick,
by and through its successor in interest,
Richard Hartmann,
*Defendants.*

Multnomah County Circuit Court
051212917

Richard HARTMANN,
*Plaintiff,*

*v.*

SUBWAY REAL ESTATE CORP.,
Lowell F. Smith,
and Barbara K. Smith,
*Defendants.*

Lowell F. SMITH
and Barbara K. Smith,
*Third Party Plaintiffs-Respondents,*

*v.*

PACIFIC DEVELOPMENT GROUP, INC.,
by and through its successor in interest,
Richard Hartmann,
*Third Party Defendant-Appellant.*

PACIFIC DEVELOPMENT CORP., INC.,
an Oregon corporation,
by and through its successor interest,
Richard Hartmann,
*Fourth Party Plaintiff,*

*v.*

PORTLAND GENERAL ELECTRIC COMPANY,
an Oregon corporation,
*Fourth Party Defendant.*

Multnomah County Circuit Court
051213098

A136650

227 P3d 1213

Kevin W. Luby argued the cause for appellant. With him on the briefs was Luby Law Firm.

William D. Brandt argued the cause and filed the brief for respondents.

Peter A. Kasting, Senior Deputy City Attorney, filed the brief *amicus curiae* for City of Portland.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

BREWER, C. J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

## BREWER, C. J.

This dispute arose from a break in a sewer pipe that connected a private building to the Portland sewer system. The break generated a sewage smell in a Subway restaurant that was located in the building, and the restaurant operators, the Smiths, sought damages against the building owner, Hartmann, in claims for breach of the lease, trespass, and nuisance. Hartmann contended that the City of Portland, pursuant to its city code, had accepted responsibility for repairing the pipe and that he therefore had no responsibility to the Smiths to remedy the problem. After a bench trial, the court found in favor of the Smiths on all three claims. Hartmann now appeals the judgment against him, and we affirm.

Because the Smiths prevailed on their claims, we state the facts in the light most favorable to them. *Liles v. Damon Corp.*, 345 Or 420, 423, 198 P3d 926 (2008). Hartmann is the owner of a building in downtown Portland (the Hartmann Building).[1] He leased space in the building to Subway Real Estate Corp., which in turn sublet the space to the Smiths for operation of a Subway franchise. The lease was negotiated in 2001, and the restaurant opened for business in 2002.

Sometime in 2003, Portland General Electric (PGE) discovered sewage in an underground utility vault that was buried in front of the Hartmann building. Later that year, the City of Portland conducted testing that revealed a break in a sewer service lateral that connected the Hartmann Building to the city sewer system. In November 2003, the city informed Hartmann that the damaged lateral had caused sewage to leak into the utility vault and that he had an obligation to fix it. Hartmann, for his part, investigated the problem and confirmed the break; however, he denied that he had an ownership interest in the damaged lateral or any responsibility to repair it.

---

[1] Hartmann purchased the building from the Hicks, who had previously owned the building through Pacific Development Group, Inc. (PDG). Hartmann, the successor-in-interest to PDG, defended against claims by the Smiths. For purposes of this opinion, we refer to Hartmann without distinguishing between him, PDG, or the Hicks.

Beginning in the spring of 2004, the Smiths discovered a sewage odor in their restaurant, which emanated from sewage leaking from the damaged lateral. The Smiths complained to Hartmann in April 2004, but he again denied that it was his responsibility to repair the lateral. The smell continued until October 2004, when PGE received a permit from the city to replace approximately 11 feet of the sewer service lateral running between the curb line in front of the Hartmann Building and the corner of the utility vault. After the repair, the odor abated, but the damage had been done. The sewer smell between April and October 2004 caused a decline in business and loss of goodwill from which the restaurant was unable to recover.

The sewer line break spawned litigation involving Hartmann, PGE, Subway, and the Smiths, among others.[2] For purposes of this appeal, the only relevant claims are those brought by the Smiths against Hartmann—claims for breach of lease, trespass, and nuisance based on Hartmann's refusal to repair the sewage leak or otherwise prevent the sewer odor from entering their restaurant. At trial, one of the central issues was whether the City of Portland had accepted responsibility for repair of the damaged sewer service lateral under its code. Hartmann took the position that, in 2002, the city assumed responsibility for the repair of all sewer service laterals and that he was therefore not liable to the Smiths. Portland City Code (PCC) 17.32.055(B)(1)(a) provides:

"1.   Commencing on October 25, 2002, the City assumes responsibility for inspection, maintenance, and repair of:

"a.   Sewer service laterals, unless the BES Chief Engineer finds there is evidence that the lateral:

"(1)   was not constructed legally, or

"(2)   was constructed as a private sewer service lateral."

---

[2] In a separate action, PGE brought claims against Hartmann and the Hicks. Hartmann then initiated this action against Subway Real Estate Corp. and the Smiths for unpaid rent, and the Smiths filed claims against Hartmann. The two actions were consolidated, but PGE's claims were settled before trial. Although Hartmann ultimately prevailed on his claim against Subway Real Estate Corp. for unpaid rent, that claim is not at issue on appeal.

The city code then defines "private sewer service lateral":

"3. 'Private Sewer Service Lateral' means a sewer service lateral that:

"a. is designated by the City Engineer as 'private' when it is permitted by the City, constructed by the property owner, and approved by the City,

"b. is not accepted by the City as a public facility, and

"c. remains the responsibility of the property owner it serves."

PCC 17.32.055(A)(3).

At trial, the city engineer, Ryan, testified that he had, in fact, found that the sewer service lateral was a "private sewer service lateral," based on his review of the city records (including maps, old permits, and maintenance records) and the applicable code definition. The city records, he explained, led him to conclude that the lateral had originally been constructed as a private sewer system, albeit in the public right of way. He further testified that there was no evidence that the private sewer system had ever been accepted by the City as a public facility—the relevant inquiry under paragraph b. of the definition of a "private sewer service lateral." Based on that evidence (and lack of evidence), he found that the sewer service lateral had been "constructed as a private sewer service lateral" within the meaning of the code and, therefore, remained the responsibility of the property owner, Hartmann.

On cross-examination, Ryan acknowledged that he had not found any evidence to satisfy paragraph a. of the definition of "private sewer service lateral"—*i.e.*, he found no evidence that the lateral was ever "designated by the City Engineer as 'private' when it [was] permitted by the City, constructed by the property owner, and approved by the City." However, in Ryan's view, that proof was unnecessary because the paragraphs of the definition were disjunctive. He explained, "[Y]ou have to realize that the City Code looks both forwards and backwards, and I would read that [paragraph b.] tells me what to do in the circumstance with an existing situation that ownership is indeterminate."

The trial court ultimately found in favor of the Smiths on their claims for breach of lease, trespass, and nuisance. In its letter opinion, the court included the following finding, which is the focus of Hartmann's appeal:

"The City Engineer reviewed the city's determination that Mr. Hartman[n] was responsible for the sewer and the repairs. Based on the relevant code provisions and the evidence available, the City Engineer determined that the damaged sewer lateral had not been accepted by the city as a public facility, which means it remained the responsibility of the property owner it served. That decision by the City Engineer is supported by the evidence in this record and the court reaches the same conclusion."

In his sole assignment of error on appeal, Hartmann contends that "[t]he trial court erred by finding that there was sufficient evidence that the sewer service lateral met the definition of a 'private sewer service lateral' as that term was defined by [PCC 17.32.055(A)(3)]." According to Hartmann, the definition of "private sewer service lateral" is not phrased in the disjunctive as the city engineer and the trial court concluded. Rather, in Hartmann's view, the definition plainly requires that a sewer service lateral satisfy *each* of the three paragraphs, which are joined with the conjunctive "and." Because there was no evidence at trial to satisfy paragraph a. of the definition, Hartmann argues, the trial court erred in accepting the city engineer's conclusion that repair of the sewer service lateral was his responsibility rather than the city's.

The Smiths offer a number of responses, one of which is that Hartmann cannot demonstrate that the trial court's factual finding, even if erroneous, substantially affected his rights. *See Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 179, 61 P3d 928 (2003); *see also* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). According to the Smiths, the judgment identically awarded them the value of their business ($203,000) on *each* of their three claims, but Hartmann's assignment of error relates only to the claim for breach of lease. Their nuisance and trespass claims, they argue, do not depend on the trial court's or the city engineer's construction

of the city code, and are therefore independent bases on which to affirm the judgment. We agree.

The Smiths asserted three claims against Hartmann. The first claim, breach of lease, alleged that Hartmann "breached the terms and provisions of its lease agreement in numerous particulars including breaching the covenant and provisions for quiet enjoyment, failing to properly maintain the premises and failing to repair the damage to the sewer line." The second claim was for trespass, based on the theory that Hartmann "trespassed upon [the Smiths'] leasehold premise by allowing sewage from its building and the odor from said sewage to permeate [the Smiths'] leasehold premises."[3] The third claim, nuisance, alleged that Hartmann "allowed a condition to exist on [Hartmann's] property consisting of untreated sewage. This condition created a nuisance which substantially interfered with the rights of [the Smiths] and their leasehold estate and created a private nuisance which resulted in substantial damages * * *." Thus, as the Smiths correctly point out, the second and third claims are not based on Hartmann's failure to repair the sewer; instead, they are premised more generally on the fact that Hartmann "allowed" untreated sewage (and its accompanying odor) from his building to reach the Smiths' restaurant.

Hartmann nevertheless insists that the nuisance and trespass claims rise or fall based on whether the city assumed responsibility for the sewer service lateral. As to the nuisance theory, he argues that he had "no duty to repair public property" and, thus, there was no basis for concluding that he engaged in any negligent, reckless, or intentional act in allowing the odor to reach the Smiths' restaurant. The trespass theory, he maintains, is "essentially identical"; he allowed his tenants to use the sewer system in the manner for which it was designed, and "[s]uch use is not contrary to any duty of care nor is it the responsibility of a private citizen to repair a public sewer system located in the public right-of-way."

---

[3] The trespass claim sought damages for emotional distress in addition to damages for business losses.

Hartmann's argument, however, assumes a fact that is inconsistent with the trial court's express and implicit factual findings—namely, he assumes that the sewer service lateral was "public property." *See* ORCP 62 F ("In an action tried without a jury, except as provided in ORS 19.415(3), the findings of the court upon the facts shall have the same force and effect, and be equally conclusive, as the verdict of a jury."). The trial court implicitly found that the damaged sewer service lateral at issue was privately constructed and privately owned; such a finding is the necessary predicate to the express finding that the damaged lateral "had not been accepted by the city as a public facility." Moreover, that factual finding—that the lateral is Hartmann's property—is supported by the evidence in the record, including permits that show repairs on a "private sewer" at that location.[4]

■■    The issue regarding the interpretation of the city code, as framed by Hartmann's assignment of error, is not relevant to *ownership interests* in the damaged sewer service lateral. Whether or not the city "assumes responsibility for inspection, maintenance, and repair" of the sewer service lateral, Hartmann maintains an ownership interest in the lateral. Said another way, a privately owned lateral that falls outside the code definition of a "private sewer service lateral" does not become "public property." Rather, it remains a privately owned sewer service lateral, albeit one that the city agrees to inspect, maintain, and repair. PCC 17.32.055.

■    For that reason, we conclude that Hartmann's focus on the city code is, at least as to the nuisance and trespass claims, misplaced. The Smiths presented evidence that Hartmann had an ownership interest in the damaged sewer service lateral; that the lateral was leaking sewage that came from Hartmann's building; that Hartmann was aware of that fact; that the city denied responsibility and directed Hartmann to repair the lateral; and that, when confronted with those facts, Hartmann allowed the sewage odor to continue to damage the Smiths, his tenants, while he sparred

---

[4] Hartmann submits that the permits (Exhibit 268) were never offered or admitted at trial and should, therefore, not be considered by this court on appeal. Although Exhibit 268 is not listed in the exhibit index of the trial transcript, the transcript itself (at page 1473) reveals that the exhibit was offered and admitted, without objection, on the final day of trial.

with the city. On those facts, a trier of fact could find that, regardless of who bore responsibility for repairs under the city code, Hartmann had the ability to control whether the odor from sewage from his building reached the Smiths, and that it was unreasonable for Hartmann to allow the odor to continue to damage the Smiths under the circumstances. For that reason, we conclude that the evidence is sufficient to support the trial court's judgment on the Smiths' claims for nuisance and trespass. *See Carvalho v. Wolfe*, 207 Or App 175, 180-81, 140 P3d 1161 (2006) ("In order for the law to attach liability to the operation of a purported nuisance, the plaintiff must allege [that the] defendant's actions were intentional, negligent, reckless or an abnormally dangerous activity. *Raymond v. Southern Pacific Co.*, 259 Or 629, 634, 488 P2d 460 (1971). A trespass also requires that the intrusion be intentional, negligent or the result of ultrahazardous activity. *Martin v. Union Pacific Railroad*, 256 Or 563, 565, 474 P2d 739 (1970)."). (Quoting *Frady v. Portland General Electric*, 55 Or App 344, 347, 637 P2d 1345 (1981).)

In light of the foregoing analysis of the Smiths' trespass and nuisance claims, we conclude that Hartmann cannot demonstrate that the only error he asserts on appeal substantially affected his rights.[5] ORS 19.415(2); *Shoup*, 335 Or at 179. We therefore affirm.

Affirmed.

---

[5] Hartmann's recovery against Subway Real Estate Corp. for unpaid rent was reduced based on the trial court's finding that Hartmann had breached his lease. Subway Real Estate Corp. is not a party to this appeal, and that aspect of the judgment is not at issue in this case.