Argued and submitted September 6, 2013, affirmed February 20, 2014

Jaswinder SINGH,
*Plaintiff-Respondent,*

*v.*

Lal Din SIDHU,
dba US Market Enterprises, LLP,
an Oregon limited liability partnership,
*Defendant-Appellant,*

*and*

Diane L. KUENZI,
aka D. Lady Kuenzi, and
Brian Duane Mumey, et al,
*Defendants.*

Marion County Circuit Court
09C15489; A148697

322 P3d 1088

Michael Mills argued the cause for appellant. With him on the opening brief were Michael Shurtleff and Mills, Jacobson Halliday, PC. On the reply brief was Michael Shurtleff.

George W. Kelly argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Defendant appeals a judgment for plaintiff in this case for false arrest, malicious prosecution, and abuse of process.[1] The trial court entered that judgment following a jury verdict in plaintiff's favor. Of the five assignments of error that defendant raises on appeal, we reject the fourth and fifth without discussion. Of the remaining three assignments of error, we write primarily to address the first, which is dispositive. In conjunction with that assignment, defendant contends that the trial court erred in denying his motions for judgment notwithstanding the verdict (JNOV) on his claim for false arrest and, alternatively, for a new trial on that claim. He makes a preserved argument and an unpreserved argument in support of that contention. Because defendant's preserved argument does not establish that any error by the trial court substantially affected defendant's rights—and because we decline to address the unpreserved argument—defendant has presented no basis for reversal of the trial court's judgment. *See Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 174, 61 P3d 928 (2003) ("In every case, the appellate courts must adhere to the limitation of ORS 19.415(2) and reverse or modify a judgment only if it can be determined from the record that the error 'substantially affect[ed] the rights of a party.'"(Brackets in original.)). Accordingly, we affirm.

We state the facts in the light most favorable to plaintiff, who prevailed below. *Jensen v. Medley*, 336 Or 222, 226, 82 P3d 149 (2003). This case involves events that occurred at a convenience store, US Market 107, which is operated by US Market 107, Inc. Plaintiff's brother, Bains, and defendant's father, Ditta, each own 50 percent of US Market 107, Inc. Ditta signed a power of attorney that gave defendant authority to act as president of that company. Bains and defendant's brother, Din, own another store, US

---

[1] Plaintiff's complaint named multiple defendants, but of those defendants, only Sidhu is a party to this appeal. Accordingly, all references in this opinion to "defendant" are to Sidhu. *See also Singh v. McLaughlin*, 255 Or App 340, 297 P3d 514 (2013) (another case based on the same facts that gave rise to this litigation, brought by the same plaintiff but against a different defendant; on appeal, we held that the trial court erred in granting the defendant's motion for directed verdict).

Market 105, as equal partners. Plaintiff was employed as the person "in charge" of both stores: US Market 107 and US Market 105.

In 2007, litigation (distinct from this case) arose between the various owners of the two stores. Defendant, acting on Ditta's behalf, filed suit against Bains. Bains countersued. Din and Bains also litigated against each other.[2]

In January 2008, defendant sent plaintiff a letter terminating plaintiff's employment at US Market 107 and informing him that he was "barred from all US Market's property" and that he would "be arrested for trespassing if [he] set foot on US Market Property[,]" including US Market 107. Two days later, Din's attorney sent a letter to plaintiff's attorney requesting that plaintiff "be replaced immediately as manager of US Market #105 * * *." The letter cited the store's decreased profitability as the reason for the requested termination. In that letter, Din's attorney also suggested turning management over to a third party or, alternatively, dissolving the partnership and shutting down the store. However, Bains, who owned half the stock in the corporation that operated US Market 107 and who was an equal partner with Din in the ownership of US Market 105, separately told plaintiff that he was free to continue working at both store locations.

Also in early 2008, McLaughlin, the attorney for US Market 107, Inc., hired Kuenzi, a private investigator, to look into US Market 107's decreased profitability. Kuenzi analyzed inventory and sales and determined that employee theft likely had caused the decreased profits, as overall sales had actually increased.

On June 26, 2008, Kuenzi was working at the offices of US Market Enterprises LLP[3] and watching a live

---

[2] The record reflects only the parties involved in the past litigation, not the factual allegations that gave rise to it.

[3] Below, the parties disputed whether the LLP is an entity owned by defendant and his wife (as defendant asserts) or is nothing more than defendant's assumed business name and has no independent legal existence (as plaintiff seems to claim). The status of the LLP is not pertinent to the issues that we address on appeal, and we therefore express no opinion on that subject.

video feed from US Market 107, as recorded and broadcast by the store's security system. Kuenzi later testified that the video had shown plaintiff wheeling a handcart with approximately four full cases of beer out of the store and loading the beer into a vehicle. Kuenzi testified that she showed the video to other people, including attorney McLaughlin, and then concluded that she had probable cause to believe that plaintiff had committed theft.[4] Accordingly, she called the police. Law enforcement officers went to the store, Kuenzi completed a citizen's arrest form, and the officers took plaintiff into custody. Plaintiff was released later that evening.

Earlier in 2008, before plaintiff's arrest, US Market 107, Inc., Ditta, and defendant had moved for appointment of a custodian for US Market 107, apparently in conjunction with the then-ongoing litigation between the store owners. Bains had objected to the motion, and a hearing had occurred in May 2008. The day after plaintiff's arrest at US Market 107, McLaughlin sought an expedited order appointing a custodian for the store, citing concerns about inventory control and plaintiff's arrest for theft. McLaughlin later wrote to plaintiff's attorney, demanding plaintiff's resignation and opining that "[n]o competent person would allow [plaintiff] near US Market #107 at any time." The court granted McLaughlin's motion in July 2008 and appointed a custodian for US Market 107, which effectively ended plaintiff's employment at the store.

The district attorney eventually dismissed the charges that had been brought against plaintiff. Plaintiff then initiated this litigation, alleging false arrest, malicious prosecution, and abuse of process. Plaintiff pursued those claims against defendant on a theory that defendant was liable for Kuenzi's actions.[5] The case went to trial before a jury. At trial, the parties presented a great deal of evidence about video recordings of the events that occurred at US

---

[4] Kuenzi did not talk to defendant immediately after she viewed the video because defendant was out of town and unreachable.

[5] US Market Enterprises LLP also was a defendant to the litigation. Defendant argued below that he could not be held personally liable for actions taken by the LLP or any of its employees or independent contractors. However, defendant has not renewed that argument on appeal. *Cf.* 261 Or App at 200 n 3.

Market 107 on June 26, 2008. Kuenzi and others testified that they had watched the video feed on June 26 and that it showed plaintiff taking beer out of the store. When plaintiff played what he asserted was the same video at trial, however, it appeared to show a different man—not plaintiff—wheeling empty beer bottles out of the store. Kuenzi testified that plaintiff's video recording was not the same video that she had viewed on June 26, 2008. The defense suggested that plaintiff had somehow altered the video that he played at trial and that, as a result, it did not show what actually had happened on June 26.

Defendant moved for a directed verdict after the parties presented their evidence. The trial court denied that motion and submitted the case to the jury, which was instructed on the elements of each of plaintiff's tort claims. The court also instructed the jury that defendant could be held liable for Kuenzi's actions in either of two ways. First, the court explained that defendant could be liable for Kuenzi's actions if Kuenzi was defendant's agent and had acted within her actual or apparent authority:

> "The person who authorizes or appears to authorize an agent to act is called the principal. The principal may be liable for acts of an employee agent.
>
> "A person or entity is an actual agent when a principal, through words or conduct, gives that person or entity the authority to act on the principal's behalf, subject to the principal's control, and that * * * person or entity agrees to act on the principal's behalf.
>
> "Actual authority exists when a principal, through words or conduct, directs an agent to act, and includes any other acts that are reasonably necessary to carry out the authorized act.
>
> "The Plaintiffs claim that * * * Kuenzi and [another involved individual] were [defendant's] agents and were acting with[in] the scope of their authority at the time involved in this case. [Defendant] denied * * * Kuenzi or [the other individual] were acting within the scope of their actual authority at the time involved in this case.
>
> "A principal is bound only by the acts of the agent [that] are within the scope of the agent's actual authority."

Second, the court instructed the jury about the circumstances in which a person can be liable for actions of an independent contractor that the person has hired. The jury could have determined, based on that instruction, that defendant would be liable for Kuenzi's actions if Kuenzi was an independent contractor and defendant actively participated in or ratified her actions:

> "The person or entity who hires an independent contractor is not liable for any economic, non-economic, or punitive damages caused by the actions of the independent contractor unless the person actively participated in the actions of the independent contractor or ratified the actions. But the independent contractor may be liable."[6]

The jury returned a verdict for plaintiff on all three of his claims against defendant, Kuenzi, and another named defendant, including the false-arrest claim that is the subject of defendant's first assignment of error. With respect to defendant, the verdict form did not require the jury to specify the basis on which it found him liable for false arrest. Rather, the verdict form simply asked the jury to declare whether defendant was "at fault":

> "Was [defendant] at fault for having plaintiff falsely arrested, or maliciously prosecuted, or subjected to an abuse of process?
>
> "For False Arrest: _____
>
> Yes or No
>
> "For Malicious Prosecution: _____
>
> Yes or No
>
> "For subjecting plaintiff to an Abuse of Process: _____"
>
> Yes or No

The verdict form instructed the jury that, if it answered any of those questions "yes," it should determine whether defendant caused plaintiff any damages and, if so, how much. The jury answered "yes" to each of the three questions, and it

---

[6] In conjunction with that instruction, the trial court also instructed the jury on what it means for a person to be an independent contractor.

awarded plaintiff $75,000 in noneconomic damages, $1,800 in economic damages, and $90,000 in punitive damages.[7]

The trial court entered a general judgment in plaintiff's favor on May 4, 2011. Defendant filed a notice of appeal on June 3, 2011, within 30 days after entry of judgment, as ORS 19.255(1) generally requires.[8]

Before he filed that notice of appeal, however, defendant moved for a JNOV under ORCP 63 and, alternatively, for a new trial under ORCP 64. In his JNOV motion, defendant argued that Kuenzi was an independent contractor and that defendant had not actively participated in or ratified her actions:

> "[T]he uncontroverted evidence was that Ms. Kuenzi was an independent contractor working for US Market # 107 on the day of Plaintiff's arrest. This is significant because the jury was instructed that a person who hires an independent contractor is not liable for any economic, non-economic, or punitive damages caused by the actions of the independent contractor unless the person participated in or ratified the actions of the independent contractor.
>
> "Here Plaintiff presented no evidence that [defendant] participated in or ratified the actions of Ms. Kuenzi * * *. Defendants presented a great deal of evidence that [defendant] was out of the state at the time of the arrest and did not participate in or ratify the actions of * * * Ms. Kuenzi at any time after they took place."

Defendant filed the motions for JNOV and for a new trial on May 12, 2011. Although the trial court issued a letter opinion denying those motions on July 12, 2011, the motions already had been deemed denied, by operation of law, on June 29, 2011—the day following 55 days after entry of judgment. ORCP 63 D(1); ORCP 64 F(1); *Propp v. Long*, 313 Or 218, 225-26, 831 P2d 685 (1992) (explaining operation of

---

[7] The jury also found in plaintiff's favor with respect to other defendants, including Kuenzi herself, and awarded additional damages against those defendants.

[8] ORS 19.255(1) states, "Except as provided in subsections (2) and (3) of this section, a notice of appeal must be served and filed within 30 days after the judgment appealed from is entered in the register."

those rules). Defendant filed an amended notice of appeal on August 1, 2011.

In this court, plaintiff first argues that defendant's appeal must be dismissed as untimely. Plaintiff acknowledges that defendant filed his initial notice of appeal within 30 days of the date on which the general judgment was entered. Nonetheless, plaintiff argues, that notice of appeal was ineffective because, by the time defendant filed it, defendant already had moved for a new trial. Accordingly, plaintiff contends, this court could have gained jurisdiction over defendant's appeal only if defendant had filed *another* notice of appeal within 30 days after June 29, 2011, the day on which his motions for JNOV and new trial were deemed denied. Defendant did not do that—he did not file his amended notice of appeal until August 1, 2011. Accordingly, plaintiff concludes, this appeal must be dismissed.

As plaintiff acknowledges, we recently rejected the same jurisdictional argument in another case, *Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 242 Or App 425, 256 P3d 146 (2011), *aff'd on other grounds*, 352 Or 583, 238 P3d 958 (2012). In *Warren*, we concluded that an appeal may go forward as long as the appellant filed a notice of appeal within 30 days after the entry of judgment, even if a new-trial motion was pending at that time. Under those circumstances, the appellant need not file a new notice of appeal after the new-trial motion is denied:

> "[T]his court has jurisdiction to decide the merits of an appeal from a trial court decision without first requiring the filing of a new notice of appeal, if: (1) when the initial notice of appeal was filed, the trial court intended to enter an appealable judgment, but (2) the notice of appeal was premature, *i.e.*, when the initial notice of appeal was filed, * * * a party had timely filed a motion for new trial and the motion had not yet been disposed of under ORCP 64 F(2)."

*Id.* at 436-37 (footnotes omitted). We decline plaintiff's invitation to revisit the rule announced in *Warren*. Accordingly, we turn to the merits of defendant's appeal.

In his first assignment of error, defendant primarily challenges the court's denial of his JNOV motion on the

false-arrest claim.[9] Defendant acknowledges that the jury could have found him liable for Kuenzi's actions, which led to plaintiff's arrest, on *either* of two theories:

> "In order for the jury to have found [defendant] liable for the arrest of Plaintiff by Kuenzi, they must have found from the preponderance of the evidence that Kuenzi was an agent of [defendant], [and] that in making the arrest she was exercising the authority imparted to her by [defendant], *or*, if she was an independent contractor acting outside the scope of her authority, that [defendant] ratified her actions."

(Emphasis added.)

Defendant's appellate brief challenges both of those two possible routes to liability. First, he contends that the record does not include evidence supporting a determination that defendant was liable for Kuenzi's acts because, in carrying out a citizen's arrest or in prompting police officers to arrest him, she acted within the scope of her authority as defendant's agent: "There is no substantial evidence to conclude that Kuenzi was an agent of [defendant], or that

---

[9] We previously have stated, in at least some cases, that "the denial of a motion for judgment notwithstanding the verdict is not reviewable." *Najjar v. Safeway, Inc.*, 203 Or App 486, 489 n 1, 125 P3d 807 (2005) (citing cases). Instead, those cases suggest, the appellant should assign error to the trial court's denial of the motion for directed verdict that the appellant will have filed as a necessary predicate to the filing of the JNOV motion. *See Iron Horse Engineering v. Northwest Rubber*, 193 Or App 402, 89 P3d 1249, *rev den*, 337 Or 657 (2004) (JNOV motion must be preceded by a directed-verdict motion). However, we also have noted some "inconsistency in our cases" on that point. *See Najjar*, 203 Or App at 489 n 1. Here, plaintiff does not contend that this court cannot review defendant's challenges to the denial of his JNOV motions; to the contrary, he contends that "an order denying a motion for a judgment notwithstanding the verdict *is* reviewable[.]" (Emphasis in original.) We decline to resolve this appeal on the ground that defendant's first three assignments of error challenge unreviewable rulings, given (1) the inconsistency in the case law, (2) the fact that defendant moved for a directed verdict before the case went to the jury, (3) the fact that any argument made in conjunction with assigning error to the denial of the directed-verdict motion would have been substantively identical to the argument that defendant makes in conjunction with his challenge to the denial of his JNOV motion, and (4) plaintiff's apparent acquiescence in the reviewability of defendant's first three assignments of error.

We also note that, although defendant's first assignment of error purports to challenge the denial of his motion for a new trial, in addition to the denial of his JNOV motion, he makes no separate argument directed against the former ruling. Accordingly, we do not further address the trial court's denial of defendant's new-trial motion.

if she was that she had authority to arrest Plaintiff." In that regard, defendant asserts, "There is no evidence that [defendant] expressly authorized Kuenzi either to investigate or to arrest Plaintiff." He also contends that no evidence suggests "that Kuenzi had implied authority to make an arrest." Second, defendant argues that—assuming that Kuenzi was an independent contractor—the record includes no evidence that defendant actively participated in or ratified her actions.

The difficulty for defendant is that only the second of those arguments is preserved for our consideration. Defendant's JNOV motion focused exclusively on whether defendant had ratified Kuenzi's actions and, therefore, could be held liable for any activities that she undertook as an independent contractor. Defendant did not argue in his JNOV motion that Kuenzi had not otherwise acted as an agent; nor did he argue that her actions were outside the scope of any authority she had as defendant's agent. Thus, defendant did not preserve for appeal any challenge to the sufficiency of the evidence supporting a determination of liability based on an *agency* theory, as opposed to a theory that defendant had ratified the acts of an independent contractor.

That lack of preservation is fatal to defendant's appeal given the jury instructions and the general form of verdict that were submitted to the jury. As noted, the jury instructions provided that the jury could find defendant liable for Kuenzi's acts for either of two reasons: (1) that Kuenzi was acting within the scope of her authority as defendant's agent; or (2) that defendant had ratified the acts that Kuenzi performed as an independent contractor. The verdict form did not ask the jury to specify on which of those two theories it found defendant liable; rather, it asked the jury only whether defendant was "at fault" for any false arrest. Thus, it is not possible to tell from the verdict in plaintiff's favor whether the jury based the verdict on the agency theory or on a theory that defendant ratified Kuenzi's acts as an independent contractor.

To establish entitlement to reversal of a trial court's judgment, an appellant must show that the trial court committed error "substantially affecting the rights of [that]

party." ORS 19.415(2). In *Shoup*, the Supreme Court explained that, in challenging a judgment entered on a jury's verdict, ORS 19.415(2) requires the appellant to show more than mere speculation about whether an alleged error affected that verdict:

> "The possibility that an error might have resulted in a different jury verdict is insufficient under the statute. Instead, the court must be able to conclude, from the record, that the error 'substantially affect[ed]' the rights of the losing party. Moreover, the statute protects the trial court judgment from reversal or modification 'except for' error substantially affecting a party's rights, indicating that reversal of a judgment is the exception, not the rule. The rule embodied in ORS 19.415(2) is neutral as between plaintiffs and defendants; it *places the burden to make a record that demonstrates prejudicial error on whichever party loses in the trial court and then seeks reversal or modification of the judgment on appeal.*"

*Shoup*, 335 Or at 173-74 (brackets in original; emphasis added).

     *Shoup* involved a defendant's appeal from a jury verdict favoring the plaintiff in a negligence action. In that case, the court had submitted three specifications of negligence to the jury—*i.e.*, three ways in which the defendant allegedly had acted negligently—two of which were valid and one of which was invalid. *Id*. at 178. The Supreme Court explained that the trial court's submission of the invalid specification to the jury did not warrant reversal because it was only *possible* that the jury had based its verdict on that invalid specification. Because the defendant had "not identified anything in the record to demonstrate that the jury based its verdict on [the invalid] specification," it had not established that "the inclusion of the invalid specification of negligence 'substantially affected' [its] rights." *Id*. (brackets omitted). Accordingly, the defendant was not entitled to reversal of the trial court's judgment.

     Here, too, defendant has not established that his rights were "substantially affected" by any error that the trial court may have committed by denying his JNOV motion. With respect to the issues regarding Kuenzi's actions that defendant raises on appeal, the motion was based solely on defendant's contention that he had not ratified actions that

Kuenzi took as an independent contractor. As explained above, the jury could have reached its determination that defendant was "at fault" for plaintiff's false arrest on a different theory altogether—that Kuenzi had been acting within the scope of her authority as defendant's agent. Because defendant has not raised a *preserved* challenge to the trial court's decision that the record included evidence permitting the jury to find liability on that agency theory, he has not established that the jury's verdict was based on an impermissible theory of liability or that the trial court erred by not granting his JNOV motion. Under *Shoup,* therefore, his first assignment of error does not present any basis for reversal.

Defendant's second and third assignments of error similarly challenge the trial court's denials of his motions for JNOV and for new trial on his claims for malicious prosecution and abuse of process. We reject those challenges for the same reason that we reject the arguments he makes in conjunction with his first assignment of error.

Affirmed.